1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

FOSS MARITIME COMPANY and
FRESCO SHIPPING S.A.,

11

Plaintiffs,

12

v.

13

RICHARD N. EASLY,

14

Defendant.

15

IN ADMIRALTY

CASE NO. C12-1484-RSM

ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT

16

## I. INTRODUCTION

17 This matter comes before the Court upon Plaintiffs' Motion for Summary Judgment (Dkt.

18 # 7). For the reasons set forth below, Plaintiffs' motion is granted.

19

## II. BACKGROUND

20 Defendant Mr. Richard N. Easly was injured on August 20, 2009, while working as a

21 seaman aboard a tugboat owned by plaintiff Foss Maritime Company ("Foss"). Defendant was

22 injured by a line dropped from a vessel operated by plaintiff Fresco Shipping, S.A. ("Fresco").

23 As a result of his injuries, Foss began paying Defendant the general maritime benefits of

24 "maintenance and cure" pursuant to the collective bargaining agreement ("CBA") between Foss

1 │ and the Inlandboatmen's Union of the Pacific Marine Division of the International Longshore

2 │ and Warehouse Union, Puget Sound Region ("IBU"), of which Defendant is a member.  Foss

3 │ paid Defendant "maintenance and cure" as specified in the current CBA that became effective

4 │ November 1, 2009. The relevant portion of the current CBA states as follows:

5 │         <u>Rule 13 – Maintenance and Cure</u>

6 │         <u>Rule 13.01</u> When a crew member is entitled to daily maintenance under the
        federal doctrine of maintenance and cure, it shall begin at the end of the period for
7 │         which "unearned wages" are payable and shall be at the rate of ninety dollars
        ($90) per day. Twenty-seven dollars ($27.00) would be considered maintenance
8 │         and sixty-three dollars ($63.00) would be considered an advance toward recovery
        of lost wages.

9 │

10 │ Dkt. # 9, Ex. 1 at 3.  From March 1, 2010, through August 31, 2012, Foss paid Defendant $90

11 │ per day.  On September 1, 2012, Foss decreased its payments to Defendant from $90 to $27 per

12 │ day.  Foss has also separately been paying "cure" on behalf of Defendant.  However, Foss has a

13 │ contractual relationship with Fresco whereby Fresco reimburses Foss for any expenses, including

14 │ maintenance and cure, in excess of $100,000 that arise from personal injuries incurred during

15 │ Foss's tug assist of Fresco's vessel.  Foss's expenses related to Defendant have exceeded

16 │ $100,000 and Fresco is currently reimbursing Foss for its expenses.

17 │         In July 2010, Defendant sued Fresco alleging that negligence on the part of the crew of

18 │ Fresco's vessel caused his injury.  Following a bench trial, Judge Lasnik of the Federal District

19 │ Court for the Western District of Washington found for Defendant.  In total, Judge Lasnik

20 │ awarded Defendant $552,120 including $355,969 for lost wages and $4,250 for future medical

21 │ expenses. *Easly v. Waterfront Shipping Co., Ltd.*, No. C10-1167RSL, 2012 WL 812354, at *11

22 │ (W.D. Wash. March 9, 2012).  On April 9, 2012, Fresco paid Defendant in full satisfaction of the

23 │ judgment.

24 │

1    Plaintiffs filed a Complaint for Declaratory Judgment (Dkt. # 1) on August 30, 2012,

2  seeking the Court's determination of three things: (1) a determination that, in light of

3  Defendant's award for lost wages in his case against Fresco, the rate of maintenance Defendant

4  is entitled to is $27 per day; (2) a determination that the payments of $63 per day for advanced

5  wages made between April 9 and August 31, 2012, constitute a duplicative payment of lost

6  wages and should be credited towards future maintenance amounts Foss may pay to Defendant;

7  and (3) a determination that the $4,250 award for future medical expenses should be credited

8  against Foss's future cure obligations to Defendant.  Plaintiffs now move for summary judgment.

9                    **III. DISCUSSION**

10  **A.  Standards**

11    Summary judgment is proper where "the movant shows that there is no genuine dispute

12  as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

13  56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In ruling on summary

14  judgment, a court does "not weigh the evidence or determine the truth of the matter but only

15  determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549

16  (9th Cir. 1994) (citing *FDIC v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on*

17  *other grounds*, 512 U.S. 79 (1994)).  Material facts are those which might affect the outcome of

18  the suit under governing law. *Anderson,* 477 U.S. at 248.

19    The Court must draw all reasonable inferences in favor of the non-moving party. *See*

20  *O'Melveny & Myers*, 969 F.2d at 747.  However, the non-moving party must "make a sufficient

21  showing on an essential element of her case with respect to which she has the burden of proof" to

22  survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  But, "[t]he

23  mere existence of a scintilla of evidence in support of the [non-moving party's] position will be

24

1 insufficient; there must be evidence on which the jury could reasonably find for the [non-moving

2 party]." *Anderson,* 477 U.S. at 252. In the context of a contract dispute, interpretation of a

3 contract is a matter of law properly decided on summary judgment. *United States v. King*

4 *Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988).

5 **B.  Standing**

6          Defendant asserts that plaintiff Fresco lacks standing to bring any claim regarding

7 Defendant's entitlement to maintenance and cure because Fresco was not Defendant's employer

8 and Defendant was not a party to the indemnity contract between Foss and Fresco. Dkt. # 13, 3.

9          "To establish standing, a plaintiff must present an injury that is concrete, particularized,

10 and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by

11 a favorable ruling." *Horne v. Flores*, 557 U.S. 433, 445 (2009). "[T]he critical question is

12 whether at least one [plaintiff] has 'alleged such a personal stake in the outcome of the

13 controversy as to warrant [its] invocation of federal-court jurisdiction.'" *Id.* (quoting *Summers v.*

14 *Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  Once one of the named plaintiffs establishes

15 standing to bring the claims, a court need not consider whether the other named plaintiff also has

16 standing. *Id.* at 446.

17          Here, plaintiff Foss has standing because Foss is Defendant's employer and is responsible

18 for Defendant's right to maintenance and cure.  Since Foss has standing, the Court need not

19 consider whether Fresco has standing.

20 **C.  Maintenance Rate & Offset of Future Maintenance Obligations**

21          Plaintiffs assert that declaratory judgment should be entered stating that Defendant is

22 only entitled to maintenance at the rate of $27 per day pursuant to the CBA. Dkt. # 7, 8-11.

23 Plaintiffs also assert that, in light of Judge Lasnik's award for lost wages, the additional $63 per

24 day that has been paid to Defendant for each day between April 9 and August 15, 2012, is a

1   duplicative payment of lost wages and should be credited against future payments of

2   maintenance. Dkt. # 1, 4-5.  Plaintiffs' second claim necessarily depends on the outcome of

3   Plaintiffs' first claim.

4        General maritime law provides that a seaman injured while in the service of a ship is

5   entitled to "maintenance and cure" by his employer. *Lipscomb v. Foss Maritime Co.*, 83 F.3d

6   1106, 1109 (9th Cir. 1996).  However, "the phrase 'maintenance and cure' is often used as legal

7   shorthand for the ill or injured seaman's right to maintenance, cure, and unearned wages." *Id.* at

8   1109 n.1.  A general maritime action for "maintenance and cure" includes "(1) 'maintenance'—a

9   living allowance for food and lodging to the ill seaman; (2) 'cure'—reimbursement for medical

10  expenses; and (3) 'unearned wages' from the onset of the injury or illness until the end of the

11  voyage." *Id.*; *Gardiner v. Sea-Land Service, Inc.*, 786 F. 2d 943, 946 (9th Cir. 1986).  Thus, the

12  phrase "maintenance and cure" can collectively include "maintenance", "cure", and "unearned

13  wages," but can also be used in a limited form to mean only the definition of each individual

14  word and not include "unearned wages." *Gardiner*, 786 F.2d at 946 (citing Grant Gilmore &

15  Charles L. Black, Jr., *The Law of Admiralty* 281, 305, 309, (2d ed. 1975)); *Lipscomb*, 83 F.3d at

16  1109, 1109 n.1; *see also* Gilmore, *supra*, at 299.  The right to maintenance and the right to cure

17  extend to the point of "maximum recovery" while the right to lost wages extends only to the end

18  of the voyage. *Gardiner*, 786 F.2d at 946.  The purposes of the ancient right to "maintenance and

19  cure" are threefold: (1) to protect the poor and improvident seamen; (2) to encourage ship

20  owners to protect seamen's health and safety; and (3) to induce employment in the merchant

21  marine. *Id.*

22       The general maritime law right to maintenance, cure, and unearned wages is imposed by

23  law and cannot be abrogated by contract. *Lipscomb*, 83 F.3d at 1108.  However, "the method for

24

1  calculating the amount of maintenance, cure, and wages may be determined by the collective

2  bargaining process." *Id.*

3       1.  Daily Maintenance Rate

4       The parties argue over whether Rule 13.01 of the CBA provides that the rate of

5  maintenance paid to Defendant should be $27 or $90 per day. Dkt. # 7, 8-10; Dkt. # 13, 10-11.

6  Since the drafters did not unambiguously define the term "maintenance" in the rule, thus

7  avoiding the current situation entirely, the Court must now navigate its way through the fog of

8  contractual interpretation to determine the parties' intent and the meaning of "maintenance" as

9  used in each sentence of the rule.[1]

10      Upon a motion for summary judgment, district courts may properly interpret a contract as

11  a matter of law. *King Features Entm't, Inc.*, 843 F.2d at 398.  When interpreting terms negotiated

12  under the auspices of a CBA, courts must "be careful to determine what were the actual terms

13  agreed to by the parties . . . and not impose a limitation on the rate of maintenance where none

14  was intended or agreed to." *Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 131 (2d Cir.

15  2005).  To aid interpretation, courts use the "[t]raditional principles of construction of CBA's to

16  guide [the] determination of which type of rate the parties intended." *Id.*; *see also*

17  *Inlandboatmens Union of Pac. v. Dutra Group*, 279 F.3d 1075, 1078-79 (9th Cir. 2002).

18      Contract terms are to be given their ordinary meaning and the plain language of the CBA

19  should be considered first. *Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007).  But, the

20  explicit meaning of a term can only be understood in light of the context of the entire agreement

21  and the reason for the term's inclusion. *Alday v. Raytheon Co.*, 693 F.3d 772, 782 (9th Cir.

22

23  [1] As a practice note, the Court suggests that attorneys refrain from including lengthy or numerous block quotes from cited cases. An attorney's time and space is more helpful to the Court, and thus better spent, by explaining *how* or *why* specific legal propositions apply to the case at hand.

24

1  2012); *Smith v. ABS Indus., Inc.*, 890 F.2d 841, 845 (6th Cir. 1989).  All terms in a maritime

2  contract should be interpreted, to the extent possible, in such a way that does not render any term

3  meaningless or superfluous. *Starrag*, 486 F.3d at 616; *Marcic*, 397 F.3d at 131-32.  Where

4  ambiguities exist, the court looks, in part, to "bargaining history, past practices, or other CBA

5  provisions." *Marcic*, 397 F.3d at 131-32. Courts must also look to the legal context in which the

6  language was written to determine the drafters' intent. *Id.* at 132 (citing *Mastro Plastics Corp. v.*

7  *NLRB*, 350 U.S. 270, 279 (1956)).  In this case, maritime law applies because the CBA is a

8  maritime contract between seamen and their employer. *See Gardiner*, 786 F.2d at 947-48.

9  Here, the specific rate of maintenance as identified in the CBA is ambiguous. The first

10  sentence of Rule 13.01 states that a "crew member is entitled to daily maintenance . . . [that]

11  shall be at the rate of ninety dollars ($90) per day." Dkt. # 9, Ex. 1 at 3.  At first glance this

12  appears explicit.  However, the second sentence shows the ambiguity by clarifying that

13  "[t]wenty-seven dollars ($27.00) would be considered maintenance and sixty-three dollars

14  ($63.00) would be considered an advance toward recovery of lost wages." Dkt. # 9, Ex. 1 at 3.

15  Defendant contends that the second sentence is conditional upon, and is only given effect

16  when, a seaman seeks recovery of lost wages from Foss. Dkt. # 13, 10. But, this interpretation

17  does not comport with the plain language of the entire rule, the course of performance under the

18  CBA, the course of dealing between Foss and the IBU, and the double recovery that would result

19  should the Court adopt Defendant's position.

20  The word "maintenance" can be restrictive meaning a daily living allowance or, when

21  used in the phrase "maintenance and cure," can be inclusive meaning a daily living allowance

22  plus unearned wages. *Gardiner*, 786 F.2d at 946.  The problem in this case is with the definition

23  of "maintenance" as used in the first sentence of Rule 13.01; is it restrictive or inclusive?

24

1    The solution can be found by looking at the plain language of the entire rule and the basic

2  contract rule of construction *ejusdem generis.* Under *ejusdem generis* a court must read specific

3  examples as constraining the general language that precedes them.  *Los Angeles News Serv. v.*

4  *CBS Broad., Inc.,* 305 F.3d 924, 933 *opinion amended and superseded*, 313 F.3d 1093 (9th Cir.

5  2002). Here, the use of maintenance in the first sentence is ambiguous while the second

6  sentence's use is not. The second sentence specifically identifies and differentiates the terms

7  "maintenance" and "unearned wages":

8      "Twenty-seven dollars ($27.00) would be considered maintenance and sixty-
        three dollars ($63.00) would be considered an advance toward recovery of lost
9      wages."

10  Dkt. # 9, Ex. 1 at 3. Therefore, the second sentence's definitions control and constrain the use of

11  "maintenance" in the first sentence.  Furthermore, this interpretation adheres to the plain

12  language of Rule 13.01 and recognizes that adopting Defendant's contention, that the

13  maintenance rate equals $90 per day, would make the second sentence superfluous.  Thus, the

14  Court holds that the rate of maintenance as applied to Defendant is $27 per day.

15      Defendant contends that the intent of the parties has always been that the rate of

16  maintenance be $90 per day. Dkt. # 13, 11; Dkt. # 15, ¶5.  Defendant supports his claim with the

17  testimony of Mr. Dennis W. Conklin, Regional Director of the IBU. Dkt. # 15.  Mr. Conklin

18  states that the intent of Rule 13.01 has always been that Foss would pay an injured seaman $90

19  per day and that if the seaman recovered lost wages from Foss under a Jones Act claim that Foss

20  would be credited with $63 per day towards its payment. Dkt. # 15, ¶5.  He further states that

21  there have "never been any discussions between Foss and the IBU dealing with any credit to

22  Foss in the event" an injured seaman recovered lost wages from a third-party. Dkt. # 15, ¶6.

23  Defendant uses this testimony as conclusive proof of intent that the maintenance rate should be

24

1   $90 per day.  However, none of the terms of Rule 13.01 limit the second sentence to apply only

2   to recovery from Foss.  Rather, without a specific limitation the plain language of the rule

3   suggests that the "($63.00) would be considered an advance toward recovery of lost wages" from

4   anyone.

5          This holding has support in Foss's course of performance. Dkt. 9, ¶8. Foss testifies that in

6   prior claims with injured seamen Foss has treated the $63 as applicable to wages and not

7   maintenance. Dkt. # 9, ¶8. Additionally, the current performance in this case, while not

8   controlling, lends weight to this interpretation because Foss's withholding of the additional $63

9   per day since September 1, 2012, would possibly subject Foss to liability for the amount of

10  maintenance withheld and could subject Foss to punitive damages. *See Atlantic Sounding Co.,*

11  *Inc. v. Townsend*, 557 U.S. 404, 424-25 (2009).

12         The course of dealing between Foss and the IBU also supports the interpretation that the

13  rate of maintenance equals $27 per day. The current CBA between Foss and the IBU became

14  effective November 1, 2009, and states

15         <u>13.01</u> When a crew member is entitled to daily maintenance under the federal
       doctrine of maintenance and cure, it shall begin at the end of the period for which
16     "unearned wages" are payable and shall be at the rate of ninety dollars ($90) per
       day. Twenty-seven dollars ($27.00) would be considered maintenance and sixty-
17     three dollars ($63.00) would be considered an advance toward recovery of lost
       wages.

18

19  Dkt. # 9, Ex. 1 at 3. The prior CBA, effective from 2007 to 2009, contained an almost identical

20  provision:

21         <u>13.01</u> When a crew member is entitled to daily maintenance under the federal
       doctrine of maintenance and cure, it shall begin at the end of the period for which
22     "unearned wages" are payable and shall be at the rate of **seventy five dollars
       ($75.00) per day**. Twenty-seven dollars ($27.00) would be considered
23     maintenance and **$48.00** would be considered an advance toward recovery of lost
       wages.

24

1

2   Dkt. # 9, Ex. 2 at 4 (emphasis added). Notably, the parties only changed the daily rate of wage

3   advance but not the daily rate of maintenance between the two contracts. This is significant

4   because the change in the rate for lost wages changed the total rate for "daily maintenance" as

5   proscribed in the first sentence indicating that "maintenance," as used in the first sentence of

6   Rule 13.01, includes both maintenance as a living allowance and an advance for lost wages.

7        Lastly, the doctrine against double recovery of wages further convinces the Court of its

8   interpretation.  The rule against double recovery is well established and prevents a party from

9   recovering wages twice. *Crooks v. United States*, 459 F.2d 631, 633 (1972); *Bryan v. Icicle*

10  *Seafoods, Inc.*, No. C06-0231RSM, 2007 WL 3125274, at *2 (W.D. Wash. Oct. 23, 2007).

11       Here, the rule supports the interpretation that the rate of maintenance equals $27 per day.

12  If the Court accepted Defendant's interpretation of the CBA an injured seaman would be entitled

13  to recover lost wages from a third-party and an additional $63 per day from Foss simply because

14  he did not sue Foss.  But, if a seaman chose to sue both Foss and a third-party in the same action,

15  the seaman would not be able to recover the additional $63 per day because it is an advance

16  against recovery of lost wages.  Similarly, if a seaman sued his employer and a third-party

17  separately and received a judgment against his employer he would be prevented from recovering

18  lost wages from a third-party and his recovery from Foss would be reduced by $63 per day due

19  to the advance pursuant to the CBA. This scenario indicates that the $63 per day payment is not

20  intended as a living allowance but rather as an advance for recovery of lost wages from any party

21  which aligns with the Court's holding that the daily maintenance rate is $27.

22       2.  Advance Towards Future Maintenance Payments

23       Plaintiffs request that, in light of Judge Lasnik's award for lost wages, the Court enter

24  declaratory judgment providing Foss with credit in the amount of $9,072—equal to the

1  cumulative $63 per day payment made from April 9 through August 31, 2012[2]—against any

2  future maintenance payments made to Defendant. Dkt. # 1, 4-5.  Plaintiffs assert that credit is

3  warranted due to the prohibition against double recovery.  If Foss is not given credit for these

4  payments Defendant would receive double recovery of lost wages via both the $63 per day and

5  the award. Dkt. # 7, 11-12. The Court agrees.

6      Defendant's sole contention in response is that the award and Foss's payments do not

7  create a double recovery because maintenance is separate and distinct from lost wages. Dkt. # 13,

8  5.  Defendant's objection relies on his position that the $63 per day payment is attributable to

9  maintenance and not lost wages. Dkt. # 13, 5, 12-16.  As described above, the Court finds that

10  the rate of maintenance in Rule 13.01 is $27 per day and the additional $63 per day is an advance

11  towards lost wages.  Given this holding and the clarity of the rule against double recovery,

12  *Crooks*, 459 F.2d at 633, the Court grants plaintiff Foss a credit in the amount of $9,072 to be

13  credited against future payments of maintenance to Defendant.

14  **D.  Credit Against Future Cure Obligations**

15      Plaintiffs contend that Judge Lasnik's award of $4,250 for further medical expenses

16  should be credited against any of Foss's future obligations to provide cure. Dkt. # 7, 12.

17  Defendant agrees that Foss is entitled to credit against future cure expenses but asserts that the

18  amount should be reduced by a proportional share of the reasonable attorneys' fees associated

19  with obtaining the judgment against Fresco. Dkt. # 13, 16.

20

21

22  [2] The Court notes a discrepancy regarding the date that Foss stopped paying Defendant $63 per day. In Plaintiffs' complaint, they state that the payments ceased on August 15, 2012, but in their motion and supporting declarations Plaintiffs state that the payments ended September 1, 2012.

23  Dkt. # 7, 11; Dkt. # 9, ¶7. As all parties appear to agree that the payment of $63 per day ended September 1, 2012, (Dkt. # 9, ¶7; Dkt. # 7, 11; Dkt. # 13, 2), the Court accepts Plaintiffs'

24  calculation of the total amount equal to $9,072.

1       Defendant argues that a pro rata share of the attorneys' fees should apply to the award

2  because the common fund doctrine applies. Dkt. # 13, 17.  Under the common fund doctrine, "a

3  litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or

4  his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van*

5  *Gemert*, 444 U.S. 472, 478 (1980).  Defendant maintains that Foss will benefit from Defendant's

6  $4,250 judgment against Fresco because Foss will not need to pay that portion of future medical

7  care. Dkt. # 13, 18.  Plaintiffs disagree, responding that that the common fund doctrine does not

8  apply because Foss will never actually benefit from the award due to Fresco's indemnification

9  for the costs of cure. Dkt. # 18, 10-11.  However, Plaintiffs' reliance on *Smith v. F/V Marauder*,

10 2003 AMC 1308, 1311 (W.D. Wash. 2003), to support their position is misplaced. Dkt. # 18, 11.

11      In *Smith*, the plaintiff claimed that his healthcare providers were subject to the common

12 fund doctrine because they would be compensated—thus benefiting—from his cure proceeds;

13 therefore, they should pay a pro rata share of the attorneys' fees and costs. *Smith*, 2003 AMC at

14 1310-11.  The court disagreed stating that the healthcare providers did not benefit because they

15 would have a claim for recovery of their costs from plaintiff regardless of whether the suit was

16 brought or the outcome. *Id.*  Plaintiffs attempt to analogize their own situation with that of the

17 healthcare providers in *Smith*. Dkt. # 18, 10-11.  However, the situation here is closer to that of

18 the insurance providers, not the healthcare providers, in *Smith*. 2003 AMC at 1310-11.

19      In describing the common fund doctrine, the *Smith* court referenced an example where an

20 uninsured motorist ("UIM") carrier provides additional proceeds to its injured insured. *Id.* (citing

21 *Winters v. State Farm Mut. Auto. Insur. Co.*, 99 Wash. App. 602, 612, 994 P.2d 881 (Wash. Ct.

22 App. 2000).  The court recognized that the UIM carrier gets to stand in the shoes of the tortfeasor

23 when it pays out coverage to the insured. *Id.*  Thus, when the insured recovers an award from the

24

1  tortfeasor directly, the UIM carrier benefits because it is able to recover a portion of the proceeds

2  it pays out. *Id.*  Therefore, the UIM carrier is subject to a pro rata share of the attorneys' fees and

3  costs incurred to generate the common fund from which it benefited. *Id.*

4       Here, Foss's position is very similar to that of the UIM carrier. Foss must pay out funds

5  to its injured seamen in fulfillment of its cure obligations. *See Lipscomb*, 83 F.3d at 1108.  Like

6  the UIM carrier, Foss is benefiting from the final award because it need not pay Defendant the

7  portion of future costs of cure covered by the award. *Easly*, 2012 WL 812354, at *8.

8       However, Plaintiffs assert that Foss does not benefit because Fresco provides indemnity,

9  (Dkt. # 18, 10); but, Plaintiffs fail to recognize the distinct relationships at play. The Foss-Easly

10  relationship is a legal relationship whereby Foss is obligated by law to pay an injured seaman the

11  costs of cure regardless of whether or not Foss is indemnified. Thus, Foss is directly responsible

12  and legally accountable to Defendant for the payment of cure.  In the contractual Foss-Fresco

13  relationship, Fresco reimburses Foss for the costs of cure. Dkt. # 5, 7.  Fresco is not responsible

14  to Defendant if Foss does not provide maintenance and cure.  While Foss does not benefit

15  financially from the award due to Fresco's indemnification, Foss does benefit by being

16  completely relieved of its obligation to pay a portion of future costs of cure to Defendant.[3]

17       Lastly, Fresco asserts that it would incur duplicate costs because Judge Lasnik awarded

18  Defendant $5,350 in costs. Dkt. # 18, 11.  However, Plaintiffs fail to provide any supporting

19  evidence and have not contested the actual amounts or arithmetic used in Defendant's

20  calculations of the final credit value. *See* Dkt. # 18. Therefore, the Court accepts Defendant's

21

22

23

[3] The situation is as if one never had to pay for dinner in the first place, rather than first footing

24  the bill and being reimbursed later.

1   calculations, (Dkt. # 13, 18-19), and grants Foss credit against the future costs of medical care in

2   the amount of $2,329.43.

3                                            **IV. CONCLUSION**

4          Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

5   and the remainder of the record, the Court hereby finds and ORDERS:

6          (1)  Plaintiffs' Motion for Summary Judgment (Dkt. # 7) is GRANTED.

7          (2)  The Clerk is directed to forward a copy of this Order to plaintiffs and to all counsel

8                of record.

9          Dated this 7th day of December 2012.

10

11

12                                          _____
                                            RICARDO S. MARTINEZ
13                                          UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24